UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL COOPER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-17-69-CG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Michael Cooper brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. Nos. 14, 15. Upon review of the administrative record (Doc. No. 10, hereinafter "R. \_") and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the matter for further proceedings.[1]

PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on November 30, 2011, alleging a disability onset date of June 24, 2011. R. 9, 188-95, 229-30. Following denial of

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Plaintiff's application initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 34-76, 83-87, 89-91. The ALJ issued an unfavorable decision on September 11, 2015. R. 9-19. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-3; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

ADMINISTRATIVE DECISION

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520, .1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 24, 2011, the alleged onset date. R. 11. At step two, the ALJ determined that Plaintiff had the severe impairments of: major depressive disorder, panic disorder, asthma, bronchitis, chronic sinusitis, allergies, and obesity. R. 11. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 11-12.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 12-17. The ALJ found that Plaintiff had the RFC to perform medium work subject to the additional limitations that Plaintiff:

> should avoid even moderate exposure to dust, fumes, gases, and pulmonary irritants; [can] perform simple and routine tasks consistent with unskilled work involving no interaction with the general public and no more than occasional interaction with coworkers. [Plaintiff] can learn tasks through verbal instruction and demonstration.

R. 12; *see* 20 C.F.R. § 404.1567(c) (defining "medium work"). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 17-18.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the hearing testimony of a vocational expert regarding the degree of erosion to the unskilled medium occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as production helper, rack loader, conveyor tender, hand bander, small-products assembler, and silver wrapper, all of which offer jobs that exist in significant numbers in the national economy. R. 18-19. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 24, 2011, through the date of the decision. R. 19.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)

(internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff presents two claims of error: (1) the ALJ erred in determining Plaintiff's RFC, including by (a) failing to properly consider the limitations caused by Plaintiff's impairment of chronic migraine headaches, (b) failing to properly consider the limitations caused by Plaintiff's impairment of agoraphobia, and (c) failing to properly consider medical opinions of Plaintiff's treating physicians; and (2) the ALJ erred at step three by improperly applying the "special technique" in evaluating whether Plaintiff's mental impairments met one or more Listings. *See* Pl.'s Br. (Doc. No. 18) at 2-8, 8-14, 6-8, 14-15, 14 n.2; *see also* 20 C.F.R. § 404.1520a(a) (describing "special technique" for evaluation of severity of mental impairments).[2]

---

[2] To the extent Plaintiff asserts that the ALJ erred in failing to find his migraines and agoraphobia to be severe impairments, such argument is not developed. *See* Pl.'s Br. at 8, 11. Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the Court will not speculate or develop appellate arguments on his behalf. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

4

A. *Whether the ALJ Properly Considered Plaintiff's Headache Impairment*

Plaintiff first argues that the ALJ failed to adequately consider his migraine headaches and resulting limitations. *See* Pl.'s Br. at 2-8. The Court agrees.

At the administrative hearing, Plaintiff testified that cluster migraines are one of the "biggest impediment[s] that keeps him from working." R. 41. In summarizing the evidence, the ALJ recited that testimony and other medical evidence relating to Plaintiff's headaches, including that:

- the claimant testified that migraines and asthma prevent him from working (R. 16; *see also* R. 41);
- on March 15, 2012, Robin Hall, MD, consultative examiner, diagnosed Plaintiff with headaches (R. 14; *see also* R. 532);
- on May 21, 2012, Christopher Bouvette, MD, diagnosed Plaintiff with headache disorder (R. 14; *see also* R. 591);
- on December 17, 2012, John Grizzle, MD, diagnosed Plaintiff with chronic migraine headaches[3] (R. 15; *see also* R. 721); and
- medical records from the Oklahoma Pain Center from January 15, 2014, through February 24, 2015, assess migraine headaches and show a continuation of treatment for headaches (R. 16; *see also* R. 862-916).

Missing from the ALJ's discussion, however, is that Plaintiff's complaints of worsening headaches caused Dr. Grizzle to refer Plaintiff to neurologist Douglas Kaplan, MD, for further evaluation and treatment. *See* R. 647-53, 728. On April 10, 2012, at his initial consultation with Dr. Kaplan, Plaintiff stated that he had been suffering from migraine headaches occurring "about once a week" and then "about six months ago"

---

[3] The ALJ incorrectly attributed this diagnosis to Dr. Grizzle; it was actually made by Douglas Kaplan, MD. *See* R. 721.

5

Plaintiff "developed a headache that has since persisted." R. 728. Plaintiff described his symptoms to Dr. Kaplan as:

> He states the pain is located on the top as well as both sides of his head and can radiate into his neck. He describes it as a pressure pain that can become sharp or throbbing in quality. He states the pain fluctuates anywhere from a 4/10 up to a 10/10 in intensity. As the pain gets more severe, he can experience symptoms of nausea, photo and phonophobia, and increased pain with activity. He has intermittent dizziness as well but denies any change in vision.

R. 728. Dr. Kaplan diagnosed chronic migraine headaches. R. 729-30. Dr. Kaplan continued to treat Plaintiff for that condition until December 2013, at which point Dr. Kaplan—noting that Plaintiff was "still having daily headache [and] none of his migraine medications have been helpful"—recommended that Plaintiff have "a pain management consultation." R. 855-57; *see also* R. 721-35, 738-56, 855-61. Other than the December 17, 2012, diagnosis misattributed to Dr. Grizzle, the ALJ's decision does not include any reference to Dr. Kaplan's treatment of Plaintiff. *See* R. 11-17.

On January 15, 2014, Plaintiff began treatment with S. Blake Kelly, MD, at the Oklahoma Pain Center. R. 912-16. The ALJ outlined this treatment in his summary of the medical evidence. R. 16. Plaintiff continued as a patient through February 24, 2015, the date of Plaintiff's most recent medical record, and the record indicates that Dr. Kelly saw Plaintiff monthly, with varying degrees of success in controlling Plaintiff's symptoms. *See* R. 862-916. On February 24, 2015, Plaintiff reported that his symptoms were worse and he did not feel they were controlled. R. 862.

Although the ALJ in other parts of her decision acknowledged that Plaintiff suffers from chronic migraine headaches, she (without explanation) did not find that condition to

be a severe impairment at step two. R. 11. In assessing Plaintiff's RFC, the ALJ recited some but not all of the medical evidence relating to Plaintiff's chronic migraine headaches. R. 14, 15, 16. And the ALJ did not expressly consider whether or how Plaintiff's headaches affect his functioning and provided no explanation for her rejection of any headache-related functional limitation in the RFC. R. 12-17.

Without foreclosing the possibility that proper consideration of Plaintiff's chronic migraine headaches could lead to the same result, the Court determines that the ALJ did not adequately consider Plaintiff's chronic migraines, either alone or in combination with Plaintiff's other impairments, rendering the RFC determination unsupported by substantial evidence. On remand, the ALJ should "consider the combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits. 42 U.S.C. § 423(d)(2)(B); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe" (emphasis omitted)).

B. *Whether the ALJ's Decision Otherwise Contains Reversible Error*

Based on the recommendation of remand, the Court need not address the remaining claims of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED in accordance with sentence four of 42 U.S.C. § 405(g). Judgment will issue accordingly.

IT IS SO ORDERED this 14th day of March, 2018.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE